**UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN**

**LAUREL A. JACOBS**                          Case No. 1:20-cv-00270

     Plaintiff,                              Hon. Janet T. Neff

v.

**CHARLES H. DOTSON, CHARLES
DOTSON, FUTUREVESTMENTS, LLC,
AND JAY WILLIAMS,**

     Defendants.

_____/

| | |
|---|---|
| John P. Smith (P71368) | Brett R. Schlender (P74851) |
| LEGAL AID OF WESTERN MICHIGAN | FOSTER SWIFT COLLINS & SMITH PC |
| Attorneys for Plaintiff | Attorneys for Dotson Defendants |
| 25 S. Division Street, Suite 300 | 1700 E. Beltline Avenue NE – Suite 200 |
| Grand Rapids, MI 49503 | Grand Rapids, MI 49525 |
| (616) 608-8047 | (616) 796-2505 |
| jsmith@legalaidwestmich.net | bschlender@fosterswift.com |

_____/

**DOTSON DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES,
AND RELIANCE ON JURY DEMAND**

     Defendants Charles H. Dotson and Charles Dotson (the "Dotson Defendants"), by their

attorneys FOSTER, SWIFT, COLLINS & SMITH PC, hereby answer Plaintiff's Complaint.

**PARTIES AND JURISDICTION**

     1.     Plaintiff, Laurel A. Jacobs, is a resident of Muskegon County, Michigan.

     **ANSWER:  The Dotson Defendants lack knowledge or information sufficient to
form a belief about the truth or accuracy of this allegation.**

     2.     Defendant Charles H. Dotson is a resident of Van Buren County, Michigan.

     **ANSWER:  Admitted.**

3.      Upon information and belief, Defendant Charles Dotson is also a resident of Van Buren County, Michigan.

**ANSWER:  Denied as untrue.  Defendant Charles Dotson, the son of Defendant Charles H. Dotson, is a resident of Cook County, Illinois.**

4.      Upon information and belief, Defendant Jay Williams is a resident of Muskegon County, Michigan.

**ANSWER:  Admitted on information and belief.**

5.      Defendant FutureVestments, LLC, is a limited partnership that regularly conducts business in Muskegon County, Michigan, and maintains a registered agent in Michigan.

**ANSWER:  The Dotson Defendants deny that FutureVestments, LLC is a limited partnership because it appears to be a limited liability company.  These defendants admit, on information and belief, that FutureVestments maintains a registered agent in Michigan, but they lack knowledge or information sufficient to form a belief about the truth or accuracy of the allegation concerning the regularity with which it conducts business in Muskegon County.**

6.      This Court is subject matter jurisdiction rests on 28 U.S.C. §1331.

**ANSWER:  Denied as untrue.**

7.      Supplemental jurisdiction over the state law claims here asserted rests on principles of ancillary and pendent jurisdiction, 28 U.S.C. §1367(a). The claims arise from a common nucleus of operative facts with the federal claim alleged herein and are so related to the federal claims as to form part of the same controversy under Article III of the U.S. Constitution.

**ANSWER:  The Dotson Defendants admit the claims arise from the common nucleus of operative facts but deny that ancillary jurisdiction is proper due to the absence**

FOSTER SWIFT COLLINS & SMITH PC | ATTORNEYS

of a basis for federal question jurisdiction under 28 U.S.C. § 1331.

8.      Venue is proper in this district under 28 U.S.C. §1391 because the defendants reside in this district and because a substantial part of the events or omissions giving rise to the plaintiff's claims occurred in this district.

**ANSWER:  The Dotson Defendants admit that venue would be proper in this district if this Court had subject matter jurisdiction over these claims, but they deny this Court has subject matter jurisdiction.**

### ANSWERS TO PLAINTIFF'S "FACTS"

9.      Laurel A. Jacobs purchased her home at 1437 Carlton, Muskegon, Michigan (hereinafter "the Property") in May 2015.

**ANSWER:  The Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or accuracy of this allegation.**

10.     As part of that purchase, Jacobs granted a mortgage interest in the Property to Nexes Realty, Inc., in the amount of $8,357.61.

**ANSWER:  The Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or accuracy of this allegation.**

11.     Jacobs fell behind in her property taxes, and faced the possibility of a property tax forfeiture in 2019.

**ANSWER:  Admitted on information and belief.**

12.     At some point in the spring of 2019, Jacobs was contacted by Jay Williams, who offered to loan her the money needed to pay off the delinquent taxes.

**ANSWER:  The Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or accuracy of these allegations.**

13.     On about March 20, 2019, Jacobs met with Williams, to discuss the agreement;

the agreement, as explained by Williams, would require Jacobs to give a deed to Williams, which he would hold, and return when the loan was paid off. Jacobs was to pay $400 a month to pay if off. The payments were to start in July 2019. Williams also explained the Jacobs would receive a check of about $300 at the closing, which she could do what she wanted to with. Williams also explained that the loan would include a $1000 fund set aside for repairs and improvements.

**ANSWER:  The Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or accuracy of these allegations.**

14.    On March 28, 2019, Jacobs again met with Williams at the offices of ATA National Title Group. At that meeting, Jacobs was told her monthly payment would be $600 a month.

**ANSWER:  The Dotson Defendants admit on information and belief that Jacobs and Williams met at the title agency on March 28, 2019.  These defendants lack knowledge or information sufficient to form a belief about the conversations that occurred between those two.**

15.    At the March 28, 2019 closing, Jacobs signed a Warranty Deed, purporting to transfer ownership in the Property to Charles H Dotson and Charles Dotson, as tenants in common.

**ANSWER:  The Dotson Defendants deny the allegations in paragraph 15 because Jacobs' use of "purporting" renders the paragraph inaccurate and untrue. These defendants admit that Jacobs executed a Warranty Deed on that date and conveyed the Property to them as tenants in common.**

16.    A Seller Statement lists the following debits that were to be paid out of the $21,500.00:

4

a.  $8,357.61        Payoff of first mortgage loan to Nexes Realty

b.  $1,200.00        April and May Payments

c.  $1,000.00        House Materials

d.  $100.37          City Property Taxes 1/1/2019 through 3/28/2019

e.  $405.96          County Property Taxes 1/1/2019 through 3/28/2019

f.  $706.29          Utilities bill owing delinquent to Township of Muskegon, MI

g.  $144.83          Garbage owing to Township of Muskegon, MI

h.  $311.21          Water and Sewer to Township of Muskegon, MI

i.  $3,522.56        2016 Delinquent Taxes to Muskegon County, MI Treasurer

j.  $3,091.57        2017 Delinquent Taxes to Muskegon County, MI Treasurer

k.  $2,283.00        2018 Delinquent Taxes to Muskegon County, MI Treasurer

**ANSWER: Admitted.**

17.     These debits left a balance due to the "seller" of $376.60.

**ANSWER:  Admitted.  Of note is that the "seller" designation was conspicuous in the document, it was clear the designation referred to Jacobs, and Jacobs signed the statement, as "seller," approving the charges.**

18.     A Settlement Statement dated March 28, 2019, also identified a payment of $5,000.00 to FutureVestments, LLC.

**ANSWER: Admitted.**

5

19.     According to the agreement between herself and the Dotsons, Jacobs was to make payments off $600.00 per month, including taxes and insurance, to the Dotsons, until the loan was paid in full, at which time, they would deed the Property back to Jacobs.

**ANSWER:  The Dotson Defendants deny paragraph 19 because it is inaccurate and untrue in the manner alleged.  Under Federal Rule of Civil Procedure 10(c), these defendants attach and incorporate the March 28, 2019, written lease (the "Lease") as EXHIBIT A.  Jacobs' characterization of the "agreement" is inaccurate and, to the extent any such claim is not supported by the express language of the Lease, it is barred by the integration clause.  *See* EXHIBIT A at ¶ 49.**

20.     At the time of the transaction, the Property was Jacobs' residence, and she continued to reside in the Property after the transaction.

**ANSWER:  The Dotson Defendants admit Jacobs resided at the Property before and after she executed the warranty deed at closing, but deny the remaining allegations in paragraph 20 because they are inaccurate in the manner alleged.**

21.     Other than the two payments that were included in the closing, Jacobs failed to make any payments on the loan.

**ANSWER:  The Dotson Defendants deny the allegations in paragraph 21 because Jacobs' characterization of the transaction as a "loan" renders the paragraph inaccurate and untrue.  Other than the first two months' rent she paid at closing, she failed to make payments under the Lease.**

22.     In early October 2019, Charles and Charles H Dotson visited Jacobs at her house to discuss the payments.

**ANSWER:   Admitted.  More precisely, they met on Sunday, October 6, 2019.**

23.     On about October 9, 2019, there was a fire at the Property, which rendered it unlivable. Jacobs move in with her daughter next door, but left her personal property in the Property.

**ANSWER:   The Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or accuracy of the allegation concerning Jacobs' personal property.  They believe Jacobs took nearly all her salvageable belongings with her when she moved in with her daughter.  These Defendants admit the allegations concerning the fire and date thereof, but affirmatively state Jacobs may have intentionally started the fire because, without limitation, the fire occurred days after the Dotson Defendants met with Jacobs to discuss her nonpayment and possible eviction.**

24.     On October 23, 2019, Jacobs received a Notice to Quit from the Dotsons.

**ANSWER:   Denied as untrue. The Dotson Defendants served the Notice to Quit on October 23, 2019.**

25.     In November 2019, Jacobs attempted to communicate with Charles Dotson through texts and phone calls, but she never received a response from him.

**ANSWER:     Denied as untrue. Defendant Charles H. Dotson communicated regularly with Jacobs via text message between the dates of October 6 and October 14, 2019.  He has no record of Jacobs attempting to text him and no recollection of her alleged attempts to call in November 2019.**

26.     In December 2019, Jacobs found a business phone number for Charles Dotson, and was able to talk to him there. Among other things, Dotson stated that he would provide notice before they began making repairs to the Property, so that Jacobs could retrieve her belongings.

**ANSWER:   The Dotson Defendants admit such a phone call occurred in or around December 2019.  By way of further answer, Jacobs signed a release on January 29, 2020, in part indicating: "I Laurel Jacobs have removed all of my personal belongings off premises Located [sic] at 1437 Carlton Road on January 29, 2020."  Pursuant to Fed. R. Civ. P. 10(c), the Release is attached as EXHIBIT B.**

27.     On about January 1, 2020, a work crew showed up at the Property, and threw Jacobs personal property into a dumpster.

**ANSWER:  Denied as inaccurate and untrue.  The work crew began work on or around January 20, 2020.  To these Defendants' knowledge, the crew discarded valueless items that were damaged in the fire at Jacobs' direction.**

28.     At about that same time, the locks were changed at the Property.

**ANSWER:  Denied as inaccurate and untrue in the manner alleged.  The locks were changed in connection with Jacobs retrieving her remaining belongings and signing the Release on January 29, 2020.**

29.     Eventually, Jacobs was able to get access to the Property, and moved as much of her personal property as possible to a storage unit.

**ANSWER:  Denied as inaccurate and untrue in the manner alleged.  By Jacobs' own words, she removed "all of [her] personal belongings off premises."  EXHIBIT B.**

30.     However, to date, possession of the Property has not been returned to Jacobs.

**ANSWER:  Admitted.**

**COUNT 1:  DECLARATORY JUDGMENT—EQUITABLE MORTGAGE**

31.     The preceding paragraphs are incorporated herein by reference.

**ANSWER:   The Dotson Defendants incorporate their answers to the preceding**

*FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS*

**paragraphs.**

32.     At the time of the transaction between Jacobs and the Dotsons, the Property was worth approximately $67,000.00.

**ANSWER:    The Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or accuracy of these allegations in paragraph 32.**

33.     At the time of the transaction between Jacobs and the Dotsons, Plaintiff was in financial difficulties, and was faced with the possible loss of her property due to an inability to pay property taxes.

**ANSWER:    Admitted on information and belief. By way of further answer, Jacobs would have lost her home to foreclosure days after she signed the Purchase Agreement and closed on the sale of her home.**

34.     The amount that the Dotsons' paid in the transaction was approximately one-third the value of the Property.

**ANSWER:    The Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or accuracy of these allegations.**

35.     The transaction between Plaintiff and the Dotsons was intended as a financing arrangement, and not an absolute sale.

**ANSWER:    Denied as untrue and contrary to, among other things, the plainly observable titles and terms of the transaction documents.**

36.     As a result, that transaction should be declared an equitable mortgage and not an outright conveyance.

**ANSWER:  Denied as untrue.**

## COUNT 2: TRUTH IN LENDING ACT

37.     The preceding paragraphs are incorporated herein by reference.

**ANSWER:    The Dotson Defendants incorporate their answer to the preceding paragraphs.**

38.     Although disguised as a sale, the transaction described herein was in reality a loan and is a consumer credit transaction within the meaning of the Truth and Lending Act, 15 U.S.C. § 1601 *et seq*.

**ANSWER:  Denied as untrue. The nature of the transaction was plainly observable to any reasonable person.**

39.     Plaintiff is a consumer within the meaning of the TILA.

**ANSWER:  Denied as untrue.**

40.     Defendants Charles Dotson and Charles H. Dotson are creditors within the meaning of the TILA.

**ANSWER:  Denied as untrue.**

41.     Defendants Charles Dotson and Charles H. Dotson were required to disclose, in writing information regarding the transaction, including the disclosures listed in 15 U.S.C. § 1638.

**ANSWER:  Denied as untrue.**

42.     Defendants Charles Dotson and Charles H. Dotson failed to make any of these disclosures.

**ANSWER:  Admitted for lack of a legal duty to do so.**

43.     The consumer credit transaction described herein is a high cost mortgage referred to in 15 U.S.C. § 1602 subsection (bb), and related regulations.

**ANSWER:  Denied as untrue.**

44.     As a result, Defendants Charles Dotson and Charles H. Dotson were required to make the disclosures required by the act, including written disclosure of the consumer's right to rescind as required by 15 U.S.C. § 1635 and the disclosure requirements in 15 U.S.C. § 1639 and related regulations.

**ANSWER:  Denied as untrue.**

45.     Defendants Charles and Charles H. Dotson failed to make any of the disclosures required by the act.

**ANSWER:  Admitted for lack of a legal duty to do so.**

46.     As a result, Plaintiff is entitled to statutory damages not to exceed $4,000.00, plus her reasonable attorneys' fees pursuant to 15 USC 1640.

**ANSWER:  Denied as untrue.**

47.     Plaintiff requests that this Court enter a judgment against Defendants Charles Dotson and Charles H. Dotson awarding actual damages or $4,000.00, whichever is greater, to Plaintiff, as well as reasonable attorney fees and costs of bringing this action.

**ANSWER:  Plaintiff's entitlement to the relief is denied as untrue.**

### COUNT 3: MICHIGAN CONSUMER PROTECTION ACT

32.     [sic] The preceding paragraphs are incorporated herein by reference.

**ANSWER:   The Dotson Defendants incorporate their answers to the preceding paragraphs, the numbers of which do not align with those that follow.**

33.     Defendants Charles Dotson, Charles H. Dotson, Jay Williams, and FutureVestments, LLC, are all engaged in the conduct of a business of providing goods or services primarily for personal family or household purposes.

**ANSWER:  Denied as untrue.**

11

34.     In the course of the transaction described above, Defendants violated the Michigan Consumer Protection Act in the following respects:

**ANSWER:  Denied as untrue.**

35.     By charging a price for the extension of credit which is grossly in excess of the price for which similar property or services are sold, in violation of MCL 445.903(1)(z).

**ANSWER:  Denied as untrue.**

36.     By causing a probability of confusion or misunderstanding regarding the terms or conditions of credit, in violation of M.C.L. 445.903(1)(o).

**ANSWER:  Denied as untrue.**

37.     Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits, in violation of M.C.L. 445.903(1)(y).

**ANSWER:  Denied as untrue.**

38.     Making statements or representations to induce Plaintiff to enter into the transaction intended to cause Plaintiff to believe that she was receiving financing for the Property of a particular nature and that any services to be provided were to be of a particular nature, standard, quality, or grade, when in fact, the services provided were not of such a nature, standard, quality or grade. MCLA 445.903(1)(e).

**ANSWER:  Denied as untrue.**

39.     Defendants, in their actions, statements and representations, caused a probability of confusion or of misunderstanding as to the legal rights, remedies or obligations of a party to the transaction, M.C.L.A 445.903(3)(n).

**ANSWER:  Denied as untrue.**

40. As a result of the violations described above, Plaintiff Laurel A. Jacobs suffered a loss.

**ANSWER:  Denied as untrue.**

41. Wherefore, Plaintiff is entitled to damages under the Michigan Consumer Protection Act, including actual and statutory damages, together with costs and reasonable attorney fees.

**ANSWER:  Denied as untrue.**

COUNT 4.  MICHIGAN CREDIT SERVICES PROTECTION ACT

59. [sic] The preceding paragraphs are incorporated herein by reference.

**ANSWER:  The Dotson Defendants incorporate their answers to the preceding paragraphs, the numbers of which do not align with those that follow.**

60. In connection with the transaction described herein, Defendant Jay Willaims provided advice or assistance regarding foreclosure of the real estate mortgage on Plaintiff's home in return for consideration.

**ANSWER:  These allegations do not appear to be directed at the Dotson Defendants and therefore no answer is required. To the extent an answer may be required, the Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or accuracy of these allegations.**

61. As a result, Defendant Williams was providing credit services within the meaning of the Credit Services Protection Act, MCL 445.1821 et. seq.

**ANSWER:  These allegations do not appear to be directed at the Dotson Defendants and therefore no answer is required. To the extent an answer may be required, the Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or**

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

accuracy of these allegations.

62.     Defendant violated MCL 445.1823(d) by making false or misleading representations in the offer or sale of their services.

**ANSWER:  These allegations do not appear to be directed at the Dotson Defendants and therefore no answer is required.  To the extent an answer may be required, the Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or accuracy of these allegations.**

63.     As a result, Plaintiff is entitled to actual and punitive damages pursuant to MCL 445.1824, together with reasonable attorney's fees and costs.

**ANSWER:  These allegations do not appear to be directed at the Dotson Defendants and therefore no answer is required.  To the extent an answer may be required, the Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or accuracy of these allegations.**

### COUNT 5: COMMON LAW CONVERSION

64.     The preceding paragraphs are incorporated herein by reference.

**ANSWER:   The Dotson Defendants incorporate their answers to the preceding paragraphs.**

59.     Defendants Charles Dotson and Charles H. Dotson locked Plaintiff out of the Property without legal right to do so.

**ANSWER:     Denied as untrue.**

60.     During that lock-out process, Defendants Charles Dotson and Charles H. Dotson caused Plaintiff's personal property to be thrown away, destroyed, or converted to their or their agents' use.

14

**ANSWER:    Denied as untrue.  Jacobs signed the Release, confirming she removed all her personal property from the Property, and voluntarily relinquished possession. EXHIBIT B.**

61.    Wherefore, Charles Dotson and Charles H. Dotson are liable to Plaintiff for the value of the property that was converted.

**ANSWER:    Denied as untrue.**

### COUNT 6:  STATUTORY CONVERSION

62.    The preceding paragraphs are incorporated herein by reference.

**ANSWER:    The Dotson Defendants incorporate their answers to the preceding paragraphs.**

63.    As stated above, Defendants Charles Dotson and Charles H. Dotson caused Plaintiff's personal property to be converted to their or their agents' use.

**ANSWER:    Denied as untrue. *See* Release, at EXHIBIT B.**

64.    In doing so, Defendants violated MCL 600.2919a.

**ANSWER:    Denied as untrue.**

65.    Wherefore, Plaintiff is entitled to treble her damages, costs, and reasonable attorney's fees.

**ANSWER:    Denied as untrue.**

### COUNT 7: LOCKOUT

66.    The preceding paragraphs are incorporated herein by reference.

**ANSWER:    The Dotson Defendants incorporate their answers to the preceding paragraphs.**

67.    In early January 2020, Defendants Charles H. Dotson and Charles Dotson caused

FOSTER SWIFT COLLINS & SMITH PC | ATTORNEYS

the locks to be changed on the Property, and did not provide a key to Plaintiff.

**ANSWER:**   **Denied as inaccurate and untrue.   The locks were changed in late January, 2020, in connection with Jacobs removing her remaining belongings and signing the Release.** *See* **Release at EXHIBIT B.**

68.     At the same time, Defendants Charles H. Dotson and Charles Dotson forcibly ejected Plaintiff from the Property through the actions of their agents.

**ANSWER:**   **Denied as untrue.**

69.     Defendants Charles H. Dotson and Charles Dotson had not filed an eviction at the time of the ejectment, nor had they obtained a judgment of possession or other legal right to enter the Property and eject Plaintiff.

**ANSWER:**   **Denied as inaccurate and untrue in the manner alleged.   The Dotson Defendants' rightfully regained possession when Jacobs voluntarily removed her belongings from the Property, relinquished possession, and executed the Release on January 29, 2020, if not sooner.** *See* **EXHIBIT B.**

70.     Defendants Charles H. Dotson and Charles Dotson therefore unlawfully ejected Plaintiff from the Property in violation of M.C.L. 600.2918.

**ANSWER:**   **Denied as untrue.**

71.     Wherefore, Plaintiff is entitled to a judgment against Defendants Charles H. Dotson and Charles Dotson in the amount of treble her actual damages, or $200.00, whichever is greater; because the lock-out is a continuing tort, here damages renew each and every day that possession of the premises is not returned to her.

**ANSWER:**   **Denied as untrue.**

### COUNT 8: FRAUDULENT MISREPRESENTATION

72.     The preceding paragraphs are incorporated herein by reference.

**ANSWER:    The Dotson Defendants incorporate their answers to the preceding paragraphs.**

73.     Defendants, through Defendant Jay Williams, made representations to Plaintiff, promising to loan her money to save her home from a tax forfeiture.

**ANSWER:    The Dotson Defendants deny Defendant Williams was acting on their behalf at any time material to this claim because the allegation is untrue.  They lack knowledge or information sufficient to form a belief about the truth or accuracy of the allegations concerning the existence or content of such representations.**

74.     Those representations were false at the time that they were made, and Defendants knew or should have know of their falsity.

**ANSWER:    The Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or accuracy of these allegations.**

75.     Plaintiff relied on the representations made by Jay Williams and, later, The Dotsons, to enter into the transaction that was labeled a sale of her home to Defendants Charles H. Dotson and Charles Dotson.

**ANSWER:    The Dotson Defendants lack knowledge or information sufficient to form a belief about the truth or accuracy of these allegations.  In violation of Fed. R. Civ. P. 9(b), Jacobs fails to plead this claim with specificity.**

76.     As a result, Plaintiff suffered harm.

**ANSWER:    Denied as untrue.**

77.     Wherefore, Plaintiff is entitled to damages from all Defendants.

**ANSWER:** **Denied as untrue.**

## COUNT 9: CIVIL CONSPIRACY

78. The preceding paragraphs are incorporated herein by reference.

**ANSWER:** **The Dotson Defendants incorporate their answers to the preceding paragraphs.**

79. All Defendants acted together to commit the torts identified above.

**ANSWER:** **Denied as untrue.**

80. Defendants acted through unlawful and tortuous means.

**ANSWER:** **Denied as untrue.**

81. Plaintiff was damaged by the wrongful conduct of Defendants.

**ANSWER:** **Denied as untrue.**

82. Wherefore, Plaintiff requests a judgment awarding her damages against all defendants, and holding them each jointly and severally liable for every one of their tortious actions.

**ANSWER:** **The Dotson Defendants deny Jacobs is entitled to such relief because the contention is untrue.**

WHEREFORE, the Dotson Defendants request a judgment of no cause for action on all Plaintiff's claims or, in the alternative, a dismissal for lack of subject matter jurisdiction, plus an award of costs, actual attorney's fees, and other relief appropriate in law or equity.

Respectfully submitted,

FOSTER SWIFT COLLINS & SMITH PC
Attorneys for Dotson Defendants

Dated: August 24, 2020                    By: _____
                                                 Brett R. Schlender (P74851)

18

## AFFIRMATIVE AND OTHER DEFENSES

Defendants Charles H. Dotson and Charles Dotson hereby give notice of their intention to rely on one or more of the following defenses:

1.     Plaintiff Jacobs knew or should have known of the nature of the transaction, which was an outright conveyance of her fee-simple interest.

2.     Neither Defendant Jay Williams nor the agents or employees of Defendant FutureVestments, LLC, were acting on behalf of either Dotson Defendant when they made any statement Plaintiff claims was false or misleading.

3.     The Dotson Defendants may be entitled to indemnification or contribution from Defendant Jay Williams, Defendant FutureVestments, LLC, or both.

4.     As to one or more of the above counts, Plaintiff Jacobs may have failed to state a claim on which relief can be granted.

5.     This Court may lack subject matter jurisdiction over this action.

6.     As a seller of real property, Plaintiff may lack standing to assert a claim under the Truth and Lending Act, 15 U.S.C. § 1601, *et seq.*

7.     As to Count 8, Plaintiff failed to "state with particularity the circumstances constituting fraud," in violation of Fed. R. Civ. P. 9(b).

8.     Plaintiff must, but cannot, prove fraud by clear and convincing evidence.

9.     Plaintiff may have unclean hands for conduct including, but not limited to, intentionally starting the fire at the subject property.

10.     Plaintiff may have brought this action in bad faith or without a reasonable basis in fact for her knowledge and understanding of the transaction at all material times.

11.     The Dotson Defendants raise any defense set forth in any written agreement to

FOSTER SWIFT COLLINS & SMITH PC | ATTORNEYS

which they and Plaintiff are parties.

12.     Plaintiff abandoned the Property, voluntarily relinquished possession, and acted inconsistent with an expectation of possession at all relevant times.

13.     Any action the Dotson Defendants took with regard to Plaintiff's personal property was done in good faith and either performed pursuant to Plaintiff's consent or necessitated by Plaintiff's inaction.

14.     Plaintiff may have released one or more claims by executing the Release attached to the Dotson Defendants' Answer as **EXHIBIT B**.

15.     Some or all of Plaintiff's claims may be barred in whole or part by waiver, acquiescence, or estoppel.

16.     Some or all of Plaintiff's claims, assertions, and evidence may be barred by the parol evidence rule or the integration clause in paragraph 49 of the Lease.

17.     Plaintiff may lack legally recognizable damages since the Property was subject to foreclosure days after the subject agreements and sale.

18.     Plaintiff may have failed to mitigate her damages, in whole or part, by such actions including, but not limited to, failing to sufficiently read material documents, failing to obtain counsel or advice on the subject transaction, failing to pay rent under the Lease, and failing to abide by other agreements.

19.     Some or all of Plaintiff's claims may be barred by the merger doctrine.

20.     Plaintiff would be unjustly enriched if the Dotson Defendants were ordered to re-convey the Property to Plaintiff.

21.     The conduct and transactions in this action fall outside the scope of those regulated by the Michigan Consumer Protection Act, MCL 445.901, *et seq.*

22.     Plaintiff may have committed a prior material breach of an agreement with the Dotson Defendants.

23.     Plaintiff may be liable to the Dotson Defendants for unpaid rent, losses caused by her intentional damage to the Property, and other consequential damages.   The Dotson Defendants intend on seeking leave to file a counterclaim if further discovery and investigation provide additional support for these claims.

24.     The Dotson Defendants respectfully request the right to amend these defenses to raise any additional defenses supported by further discovery and investigation.

## RELIANCE ON JURY DEMAND

The Dotson Defendants hereby give notice of their reliance on the Jury Demand filed by Plaintiff with her Complaint.

Respectfully submitted,

FOSTER SWIFT COLLINS & SMITH PC
Attorneys for Dotson Defendants

Dated: August 24, 2020                    By: _____
Brett R. Schlender (P74851)

86656:00001:4962366-1

21

# EXHIBIT A

# STANDARD LEASE AGREEMENT
*(Fixed Tenancy)*

We encourage and support the nation's affirmative housing program in which there are no barriers to obtaining housing because of race, color, religion, sex, national origin, handicap or familial status

**"NOTICE: Michigan law establishes rights and obligations for parties to rental agreements. This agreement is required to comply with the Truth-in-Renting Act. If you have a question about the interpretation or legality of a provision of this agreement, you may want to seek assistance from a lawyer or other qualified person."**

Notice: This Agreement is a legally binding and enforceable document, which you should read carefully before signing.

1. Date of this Agreement: 3-28-19

2. Move-in Date: 3-28-19

3. **Identification of Landlord and Tenant.** This Agreement is entered into on the date above indicated between
Charles H. Dotson _____ (Landlord) and
Laurel Toccos of 1437 Carlton St Muskegon, MI 49442 _____ (Tenant).
Each Tenant is jointly and severally liable for the payment of rent and performance of all other terms of this Agreement.

4. **Identification of Premises.** Subject to the terms and conditions in this Agreement, Landlord rents to Tenant, and Tenant rents from Landlord, for residential purposes only, the Premises located at:
Street Address: 1437 Carlton St _____ Unit #(If appicable): _____
City: Muskegon _____ State: Michigan Zip Code: 49442
together with the following furnishings and appliances: _____
_____
Rental of the Premises also includes: _____

5. **Limits on Use and Occupancy.** The Premises are to be used only as a private residence for the above listed Tenant(s) and the following individuals: Laurel Toccos
All occupants must be approved by Landlord. Occupancy by guests for more than _____ days is prohibited without Landlord's written consent and will be considered a breach of this Agreement. All occupants must be named in the lease.

6. **Term of Tenancy.** The rental will begin on March 28th _____ , 20 19
The Tenant agrees to lease the premises for the period of _____/_____/_____ through _____/_____/_____

7. **Rent Amount and Payment of Rent.** Tenant will pay to the Landlord rent of $ 600 , payable in advance on the 1st day of each month, except when that day falls on a weekend or legal holiday, in which case rent is due on the next business day.
*Delivery of payment:*
Rent will be paid:
☐ by mail, to: _____
☐ in person, at: _____
☐ online at: _____
☒ ACH/electronic
or at such other place as Landlord designates.

Fifth Third Bank          — Please make sure to put your name
Charles H Dotson                  + address on deposit slip
— Act # 7926133973
— Routing # 071923909

C.H.D.

*Form of payment:*

Landlord will accept payment in these forms:

☐ personal check made payable to: _____

☐ cashier's check made payable to: _____

☐ credit card

☐ money order

☐ cash

☒ ACH/electronic

☐ other _____

*Prorated first month's rent:*

For the period from Tenant's move-in date,  ____ / ____ / ____  through  ____ / ____ / ____, Tenant will pay to Landlord the prorated rent of $ _____. This amount will be paid on or before the date the Tenant moves in.

8. **Late Charges.** If Tenant fails to pay the rent in full before the end of the ___4th___ day after it is due, Tenant will pay Landlord a late charge of ☒ $ _25_, plus $_____ OR ☐ _____ % of monthly rent amount, for each additional day that the rent remains unpaid. The total late charge for any one Rental Period will not exceed $_____. Landlord does not waive the right to insist on payment of the rent in full on the date it is due.

9. **Timely Payment of Rent:** Failure of Tenant to pay rent on the day it is due on three or more occasions during any previous six month period is a breach of this Agreement and grounds for termination of the tenancy.

10. **Domestic Violence**. A tenant who has a reasonable apprehension of present danger to him or her or his or her child from domestic violence, sexual assault, or stalking may have special statutory rights to seek a release of rental obligation under MCL 554.601b.

11. **Additional Rent:** If the Tenant fails to perform any obligation of this Agreement, such as, but not limited to, payment of utilities, trash removal, repairs, maintenance, etc., which results in a monetary expenditure by the Landlord, such amounts will be deemed additional rent which is immediately due and payable AND all payments made to Landlord will be applied to amounts in the following order: 1st-security deposit; 2nd-late fees; 3rd-utilities; 4th-maintenance or repairs, damages, other charges permitted by this Agreement; 5th-past due rent; 6th-current rent due.

12. **Returned Checks and Other Bank Charges.** If any payment offered by Tenant to Landlord in payment of rent or any other amount due under this Agreement is returned for lack of sufficient funds, a "stop payment" or any other reason, Tenant will pay Landlord a returned check charge of $ _35_, plus any bank charges assessed.

13. **Renewal and Modification of Lease Agreement.** This Agreement shall be automatically renewed for successive terms of one month each, subject to the following conditions: Landlord or Tenant may decline the automatic renewal of this Agreement by giving notice of intent to terminate the tenancy with a 30 day written notice. Landlord may increase said rental amount or modify Agreement for any extended term by giving advance written notice equal to 30 days to the Tenant. Tenant agrees that any changes or modifications of this Agreement must be written and signed by Landlord or their Agent. Under no circumstances are oral agreements binding.

14. **Cleaning Fee.** Tenant agrees to pay a non-refundable cleaning fee of $ _0_ (Cleaning Fee must be paid prior to move-in date.) This fee is in addition to and is not part of the security deposit.

15. **Security Deposit.** Tenant agrees to pay security deposit of: _____ ____ /100 dollars ($ _0_) which will be refunded after termination of tenancy and end of Tenant's occupancy in the manner prescribed in the Landlord-Tenant Relationship Act of the State of Michigan, and upon satisfaction of the terms and conditions of this Agreement. *Tenant may not, without Landlord's prior written consent, apply this security deposit to the last month's rent or to any other amount owed or due under this Agreement.*

**Other Cost.** Other cost will be paid by the parties as designated below (T = Tenant, L = Landlord):

| Electricity: | (T) | L | Lawn: | (T) | L | Pest Control: | (T) | L | Smoke Detector Battery: | (T) | L |
| Heating Fuel: | (T) | L | Garbage: | (T) | L | Snow Removal: | (T) | L | Telephone Lines: | (T) | L |
| Cooking Fuel: | (T) | L | Trash: | (T) | L | Shovel Walks: | (T) | L | Other: _____ | (T) | L |

Water: ☒ Tenant agrees to pay for water and sewage services and have these services placed in their own name. Furthermore, the tenant agrees that Lessor/Landlord shall not be liable for payment of water or sewage system bills accruing subsequent to the filing by Lessor of an affidavit as provided for in MCL 123.165 with the appropriate municipal authority. Tenant agrees to pay and be responsible for such bills and understands that the municipality may terminate water and sewage services if bills are not paid.

17. **Excessive Utility Usage.** In the case where the Landlord pays the utility, the Tenant agrees to reimburse Landlord for utility usage, including unreported water leaks that exceed the monthly average use during the preceding twelve month period.

18. **Notice of Utility Shut Off.** Where Tenant is responsible for paying for any or all utilities, Tenant shall send the Landlord a certified letter seven (7) days in advance of any utility being turned off. If Tenant fails to give such notice, Tenant agrees to pay Landlord for any damages caused by the utilities being turned off. Tenant also agrees that the Landlord may obtain duplicate copies of shut off notice from the utility(ies) company.

19. **Inventory Checklist.** Tenant hereby acknowledges receiving an inventory checklist that must be returned to the Landlord within seven (7) days of obtaining possession of the Premises or the Premises will be considered free of defects. Items found torn, burned, stained, inoperative, or damaged in any way must be reported on the inventory checklist; otherwise said defects shall be deemed waived.

20. **Habitability.** Tenant has checked the Premises thoroughly and agrees the unit is entirely habitable as to health and safety; however, if any health and safety issue in regard to the Premises is found upon move-in, Tenant shall send the Landlord a certified letter within forty-eight (48) hours of move-in date, notifying him or her of the details.

21. **Locks and Landlord Access.** Tenant will not, without Landlord's prior written consent, alter, re-key, or install any locks to the Premises or install or alter any burglar alarm system. Tenant will provide Landlord with a key or keys capable of unlocking all such re-keyed or new locks as well as instructions on how to disarm any altered or new burglar alarm system. All keys must be returned upon vacating the Premises. $_____ will be charged for each lost or missing key, plus the actual cost of replacing the keys and/or changing the locks. Tenants were given ___ keys at the beginning of the lease.

22. **Subleasing, Sharing, Assignment, and Guest at Premises.** No subleasing, sharing of Premises, or assignment of Agreement is permitted without prior written permission of the Landlord.

23. **Parking.** No parking on property other than Tenant's personal vehicle is allowed and then only at such locations as specified by Landlord. No commercial vehicles, boats, trailers, recreational vehicles or unlicensed or inoperable vehicles or any other vehicle not allowed by law shall be parked on the Premises. Repair or maintenance of vehicles is not allowed on property without written permission. Tenant agrees that Landlord may remove unauthorized vehicles with or without notice, and Tenant shall reimburse Landlord for the cost of such removal.

24. **Personal Injury/Liability/Indemnification/Damage to Tenant's Personal Property.** Landlord shall not be liable for any damage or injury occurring on or about the Premises to Tenant, Tenant's family members, guests or invitees, except in the case of Landlord's failure to perform, or negligent performance of, a duty imposed by law. Tenant hereby agrees to protect, indemnify and hold Landlord harmless from and against any and all losses, costs, expenses, damages, or liability arising out of any accident or other occurrence on the Premises or any part thereof, or in any common area, causing injury to any person or property whomsoever or whatsoever, no matter how caused, except in the case of Landlord's failure to perform, or negligent performance of, a duty imposed by law. Landlord is not responsible for damage to Tenant's personal property resulting from fire, storm, rain, flood, power outage, appliance failure, theft, vandalism, leaking fixtures, acts of God, etc. Tenant accepts responsibility for insuring their personal property. **Landlord highly recommends the Tenant obtain renter's insurance.** Tenant shall also be liable to Landlord or its insurance carrier for any damage to the premises or to the Landlord's other property, such as other rental units, common facilities and equipment that is caused by the acts or omissions of Tenant or Tenant's guests.

25. **Pets.** No animals or pets shall be brought on the Premises without prior written consent of the Landlord and upon the execution of a Pet Agreement and the payment of any applicable fees.

ant's Maintenance Responsibilities. Tenant shall keep the Premises, including furniture and all fixtures, in a clean, sanitary and orderly condition with special attention to the stove and refrigerator, if provided, and leave the unit in the same condition as when taken except for normal wear and tear. Landlord will not pay for cleaning or any work of this kind contracted by the Tenant, unless expressly authorized in writing.

27. **Common Areas.** The sidewalks, driveways, passages, halls and common areas shall not be obstructed nor used for any purpose other than ingress or egress from the premises.  Bicycles, skateboards, scooters, roller-skates, rollerblades or any device of the like are not permitted in common areas, hallways, roof top patio, sidewalks or the parking area.

28. **Storage:** Storage is not allowed except in areas designated by the Landlord.  Tenants are solely responsible for their personal belongings wherever stored or placed. If stored in an area not designated by Landlord, Landlord can remove personal belongings with 24 hour notice.

29. **Renovations and Remodeling.** Tenant agrees not to make any repairs or alterations to the Premises, including repainting, remodeling, driving nails in woodwork or walls, using any adhesive items on walls, without written consent of the Landlord. The Landlord will not pay for remodeling, decorating, or any work of this kind contracted by Tenant, unless authorized in writing prior to the beginning of any renovation or remodeling. The Tenant further agrees not to remove any furnishings, fixtures, or appliances without written consent of the Landlord.

30. **Items Not Allowed.** Tenant may not place any of the following in or on the Premises without written authorization from Landlord:
_____
_____

31. **Repairs.** With written permission of the Landlord, the Tenant agrees to promptly have repairs made by authorized persons only or reimburse Landlord for damages to the Premises during the tenancy. The Landlord must be notified immediately of anything broken, stained, leaking, or inoperable. Tenant shall immediately pay for any costs incurred and/or damages resulting from overflowing, and/or clogging of waste pipes, garbage disposal, toilets, sinks, tubs, showers, or lavatory caused by Tenant or guest. Tenant accepts responsibility to mitigate damage to property from any and all causes.

32. **Landlord's Rights Concerning Entry.** Landlord reserves the right to repair, show unit, or inspect the Premises upon twenty-four (24) hour notice. In the event of emergencies, the Landlord may enter without notice.

33. **Disposal of Garbage, Debris, and Junk.** Tenant agrees to regularly dispose of all garbage, debris, or junk during occupancy and upon vacating the Premises as prescribed by the laws of the State of Michigan and the ordinances of the locality in which the Premises is located. Tenant agrees to pay all fines and fees regarding disposal of said items and for violations of municipal ordinances.

34. **Use of Premises.** Tenant agrees to use the Premises for residential purposes only and not for business, illegal, or hazardous purposes. Tenant may be evicted upon a one (1) day Notice to Quit if the Tenant, member of Tenant's household, or other person under the Tenant's control, has manufactured, delivered, possessed with intent to deliver or possessed a controlled substance as defined by Michigan Public Act 368 of 1978, on the Premises. Tenant shall not permit a use of the Premises that generates an unusual amount of traffic.

35. **Parties & Other Disturbances Not Allowed.** Tenant agrees that no parties are allowed; and no one is permitted to carry out any activity, play an instrument, use an electronic device, or operate any mechanical device in any manner or otherwise engage in conduct that disturbs or annoys other Tenants or neighbors. Tenant is responsible for the activity and conduct of all occupants, guests and visitors.

36. **Smoke Detector Disclosure.** Tenant agrees that the Premises is equipped with working smoke detectors. Tenant shall maintain smoke detectors in working order at all times. Tenants will be charged for the replacement of missing or damaged smoke detectors and for damages caused by their removal.

37. **Rules & Regulations.** Any rules and regulations published by Landlord become part of this Agreement. Tenant agrees to abide by all rules and regulations that may be published by Landlord.

38. **Violations of Agreement and Cause for Eviction.** Violation of any provision of this Agreement, rules, or regulations, including non-payment of rent can be cause for eviction.  Furthermore, acts committed by tenants or their guest in violation of local, state or federal laws and regulations can be cause for eviction.

**ctronic Service Consent.** By initialing this clause and providing an email address below, the below Tenant(s) hereby consent to receive ll demands for possession nonpayment of rent as provided for under MCL 600.5716 by electronic service. Tenant(s) request any demands be sent to the following email address(es):

Tenant's Name: _____     Email Address: _____

Tenant's Name: _____     Email Address: _____

Tenant's Name: _____     Email Address: _____

Tenant's Name: _____     Email Address: _____

An email confirmation of this consent will be sent to the email address(es) listed above. You must affirmatively respond to the email to confirm your agreement to electronic service.

**Tenant initials:** _____     _____     _____

40. **Lead-based Paint Disclosure.** (Housing constructed before 1978 only.) Tenant acknowledges receipt, review and execution of the Lead Warning and Disclosure Statements and applicable reports and the receipt of the EPA pamphlet, "Protect Your Family From Lead In Your Home."

41. **Covenants and Conditions.** Each provision of this Agreement to be performed by Tenant shall be deemed both a covenant and a condition which Tenant agrees to abide by strictly. Any violation of any provision of this Agreement shall constitute a material breach of same, in which case Landlord may, at option, terminate this Agreement according to its terms. In the event of such termination, Landlord agrees to use their best effort to re-rent the Premises or to otherwise mitigate damages as required by law.

42. **Binding Effect.** The covenants, conditions, and agreements contained in this Agreement shall bind and inure to the benefit of the Landlord and the Tenant and their respective heirs, distributees, executors, administrators, successors, and assigns.

43. **No Waiver.** Landlord's failure to enforce any term of this Agreement shall not be deemed a waiver of the enforcement of that or any other term. The receipt by Landlord of rent with knowledge of a breach of any term of this Agreement shall not be deemed a waiver of such breach, nor shall partial payment of rent be deemed a waiver of Landlord's right to the full amount thereof.

44. **Severability.** If any provision of this Agreement should be or become invalid, such invalidity shall not in any way affect any of the other provisions of this Agreement, which shall continue to remain in full force and effect.

45. **Subordination.** The Agreement is and shall be subject and subordinate to any ground or underlying agreement or lease and mortgages now or hereafter affecting the real estate of which the Premises are a part, and to all renewals, modifications, replacements, and extensions thereof.

46. **Early Termination.** If the Tenant has occupied the unit for more than thirteen (13) months and the Tenant becomes eligible during the lease term to take possession of a subsidized rental unit in senior citizen housing and provides the Landlord with written proof of that eligibility or the Tenant becomes incapable during the lease term of living independently, as certified by a physician in a notarized statement, the Tenant may terminate this lease with a sixty (60) day written notice to the Landlord.

47. **Abandoned Property.** If the Tenant abandons the Premises, the Landlord is authorized, at their sole discretion, to peacefully repossess the Premises and dispose of any and all of the Tenant's abandoned personal property, including but not limited to food, clothing, jewelry, sundries, appliances, furnishings, window treatments, decorations, fixtures, bedding, equipment, machinery, and vehicles.

48. **Other** _____
_____
_____

49. **Entire Agreement.** Tenant acknowledges that Landlord has made no representations or promises with respect to the Premises except as herein expressly set forth and that the foregoing constitutes the entire Agreement between the parties.

nant's signature below indicates the Tenant has read, understands, is satisfied with, and agrees to abide by all conditions of this agreement. The invalidation of any provision herein by Judgment of Court order shall not otherwise affect any of the other provisions of this agreement.

| _____ | _____ | 3/28/19 |
|---|---|---|
| Signature of Property Owner/Agent/Landlord | Signature of Tenant | Tenant's Social Security Number |

| Charles H. Dotson | _____ | _____ |
|---|---|---|
| Printed Name of Property Owner/Agent/Landlord | Signature of Tenant | Tenant's Social Security Number |

| | _____ | _____ |
|---|---|---|
| | Signature of Tenant | Tenant's Social Security Number |

| | _____ | _____ |
|---|---|---|
| | Signature of Tenant | Tenant's Social Security Number |

**"You must notify your landlord in writing within four (4) days after you move of a forwarding address where you can be reached and where you can receive mail. Otherwise your landlord shall be relieved of sending you an itemized list of damages and the penalties adherent to that failure."**

**Security Deposit Notice**

Security deposit of $ _____ is to be deposited at: _____

And, if applicable, Surety Bond has been posted with: _____

# EXHIBIT B

January 29 2020

Every thing that I have Requested be
taken to storage Unit has Been Removed
from 1437 Carlton Street and has been moved
to storage unit per my directions

x Laurel Jacobs       1/29/2020

I Laurel Jacobs have Removed all of my
personal belongings off premises Located at
1437 carlton Rd on January 29 2020 at time

x Laurel Jacobs       they agree to pay
300.00 for Pool.       1/29/2020