**UNITED STATE DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

**LAUREL A. JACOBS**

    Plaintiff/Counter-Defendant,

v.

**CHARLES H. DOTSON and CHARLES DOTSON,**

    Defendant/Counter-Plaintiffs.
_____/

Case No. 1:20-cv-00270

U.S. Magistrate Judge
Phillip J. Green

| | |
|---|---|
| John P. Smith (P71368)<br>LEGAL AID OF WESTERN MICHIGAN<br>Attorneys for Plaintiff<br>25 S. Division Street, Suite 300<br>Grand Rapids, MI 49503<br>(616) 608-8047<br>jsmith@legalaidwestmich.net | Brett R. Schlender (P74851)<br>FOSTER SWIFT COLLINS & SMITH PC<br>Attorneys for Dotson Defendants<br>1700 E. Beltline Avenue NE – Suite 200<br>Grand Rapids, MI 49525<br>(616) 796-2505<br>bschlender@fosterswift.com |

_____/

**DOTSON DEFENDANTS' COUNTER-COMPLAINT**

Defendant/Counter-Plaintiffs Charles H. Dotson and Charles Dotson (the "Dotson Defendants"), by their attorneys FOSTER, SWIFT, COLLINS & SMITH PC, state:

**PARTIES AND JURISDICTION**

1. Plaintiff/Counter-Defendant Laurel A. Jacobs resides in Muskegon County, Michigan.

2. Defendant/Counter-Plaintiff Charles H. Dotson is a resident of Van Buren County, Michigan.

3. Defendant/Counter-Plaintiff Charles Dotson resides in Cook County, Illinois.

4. On March 27, 2020, Jacobs initiated the case at bar by asserting a claim under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, as the basis for this Court's jurisdiction.

5. The claim in this Counter-Complaint arises out of the same transactions and occurrences as those in Jacobs' Complaint.

6. If this Court has federal question jurisdiction per 28 U.S.C. § 1331, it has ancillary jurisdiction over these counterclaims under 28 U.S.C. § 1367.

## BACKGROUND

7. The Dotson Defendants incorporate the preceding allegations.

8. The Dotson Defendants own real property located at 1437 Carlton Street in Muskegon, Michigan (the "Property").

9. On March 28, 2019, Jacobs executed a lease to rent the Property from the Dotson Defendants for $600 per month, payable by the first day of each month. The Standard Lease Agreement (the "Lease") is attached as **Exhibit A**.

10. The Lease imposes a $25 late charge for unpaid rent beginning on the fifth day of each month and accruing each day thereafter until paid. (**Exhibit A** at ¶ 8.)

11. On March 28, 2019, Jacobs prepaid the rent for April and May 2019.

12. Jacobs resided at the Property until October 2019, but failed to pay rent for June, July, August, September, and October 2019.

13. Further, Jacobs agreed to pay utilities, but failed to pay utilities during her tenancy. (*See* **Exhibit A** at ¶ 16.)

14. On October 9, 2019, Jacobs left a stove burner on while she was away from the Property. A fire started and caused substantial damage to the Property, rendering it uninhabitable.

15. Months later, Jacobs filed suit against the Dotson Defendants claiming she owns or should own the Property.

**COUNT I – ASSUMPSIT**

16. The Dotson Defendants incorporate the preceding allegations.

17. MCL 554.132 provides for an action in assumpsit to recover rents and other unpaid expenses under a written lease or tenancy relationship.

18. On March 28, 2019, Jacobs and the Dotson Defendants formed a landlord-tenant relationship. (**Exhibit A**.)

19. From March 28, 2019, until October 9, 2019, Jacobs used and occupied the Property.

20. For her right to use and occupy the Property, Jacobs was bound to pay the Dotson Defendants rent and pay the costs of utility service to the various providers.

21. Jacobs failed to pay rent from June to October 2019 and she neglected to pay most, if not all, the utilities due during her use and occupation.

22. Jacobs' failure to pay the rents and expenses associated with the Property renders her liable to the Dotson Defendants in assumpsit.

23. As a direct and proximate result of Jacobs' failure to pay said rents and expenses, she is liable to the Dotson Defendants for the following damages:

    a. $2,400 in unpaid rent between June and September 2019;

    b. $174 in unpaid prorated rent for October 2019;

    c. as of September 28, 2020, $12,050 and counting in late fees for June 2019's unpaid rent;

    d. as of September 28, 2020, $11,300 and counting in late fees for July 2019's unpaid rent;

    e. as of September 28, 2020, $10,525 and counting in late fees for August 2019's unpaid rent;

    f. as of September 28, 2020, $9,750 and counting in late fees for September 2019's unpaid rent;

3

    g. as of September 28, 2020, $9,000 and counting in late fees for October 2019's unpaid rent;

    h. $443.32 in unpaid water and sewer utility bills;

    i. other utility bills and expenses Jacobs was obligated to pay but did not; and

    j. the attorney's fees, costs, and expenses associated with this counterclaim.

WHEREFORE, Defendant/Counter-Plaintiffs Charles H. Dotson and Charles Dotson respectfully request a judgment against Plaintiff/Counter-Defendant Laurel A. Jacobs in the amount of $55,642.32, plus late fees for unpaid rent that continue to accrue until paid, plus other unpaid utilities and expenses that come to light through discovery and investigation, judgment interest, attorney's fees, costs, expenses, and all other relief appropriate in law and equity.

### RELIANCE ON JURY DEMAND

The Dotson Defendants hereby give notice of their reliance on the Jury Demand filed by Plaintiff with her Complaint.

Respectfully submitted,

FOSTER SWIFT COLLINS & SMITH PC
Attorneys for Dotson Defendants

Dated: September 30, 2020    By: _____
    Brett R. Schlender (P74851)

86656:00001:5032240-1

# Exhibit A

# STANDARD LEASE AGREEMENT
*(Fixed Tenancy)*

We encourage and support the nation's affirmative housing program in which there are no barriers to obtaining housing because of race, color, religion, sex, national origin, handicap or familial status

"**NOTICE:** Michigan law establishes rights and obligations for parties to rental agreements. This agreement is required to comply with the Truth-in-Renting Act. If you have a question about the interpretation or legality of a provision of this agreement, you may want to seek assistance from a lawyer or other qualified person."

Notice: This Agreement is a legally binding and enforceable document, which you should read carefully before signing.

1. **Date of this Agreement:** 3-28-19
2. **Move-in Date:** 3-28-19
3. **Identification of Landlord and Tenant.** This Agreement is entered into on the date above indicated between Charles H. Oetson _____ (Landlord) and Laurel Jacobs of 1437 Carlton St. in Muskegon, MI 49442 _____ (Tenant). Each Tenant is jointly and severally liable for the payment of rent and performance of all other terms of this Agreement.
4. **Identification of Premises.** Subject to the terms and conditions in this Agreement, Landlord rents to Tenant, and Tenant rents from Landlord, for residential purposes only, the Premises located at:
   Street Address: 1437 Carlton St _____ Unit #(If appicable): _____
   City: Muskegon _____ State: Michigan Zip Code: 49442
   together with the following furnishings and appliances: _____
   Rental of the Premises also includes: _____
5. **Limits on Use and Occupancy.** The Premises are to be used only as a private residence for the above listed Tenant(s) and the following individuals: Laurel Jacobs _____
   All occupants must be approved by Landlord. Occupancy by guests for more than _____ days is prohibited without Landlord's written consent and will be considered a breach of this Agreement. All occupants must be named in the lease.
6. **Term of Tenancy.** The rental will begin on March 28th _____, 20 19.
   The Tenant agrees to lease the premises for the period of ___/___/___ through ___/___/___
7. **Rent Amount and Payment of Rent.** Tenant will pay to the Landlord rent of $ 600 _____, payable in advance on the 1st day of each month, except when that day falls on a weekend or legal holiday, in which case rent is due on the next business day.
   *Delivery of payment:*
   Rent will be paid:
   ☐ by mail, to: _____
   ☐ in person, at: _____
   ☐ online at: _____
   ☒ ACH/electronic
   or at such other place as Landlord designates.

Fifth Third Bank
Charles H. Oetson
– Act # 7926132473
– Routing # 071423904

– Please make sure to put your name + address on deposit slip

CHD

©2017 Rental Property Owners Association of Kent County    Form No. 2    Tenant's initials LJ    Page 1 of 6

*Form of payment:*

Landlord will accept payment in these forms:

- [ ] personal check made payable to: _____
- [ ] cashier's check made payable to: _____
- [ ] credit card
- [ ] money order
- [ ] cash
- [x] ACH/electronic
- [ ] other _____

*Prorated first month's rent:*

For the period from Tenant's move-in date, ___ / ___ / ___ through ___ / ___ / ___, Tenant will pay to Landlord the prorated rent of $ _____. This amount will be paid on or before the date the Tenant moves in.

8. **Late Charges.** If Tenant fails to pay the rent in full before the end of the 4th day after it is due, Tenant will pay Landlord a late charge of [x] $ 35, plus $ _____ OR [ ] _____ % of monthly rent amount, for each additional day that the rent remains unpaid. The total late charge for any one Rental Period will not exceed $ _____. Landlord does not waive the right to insist on payment of the rent in full on the date it is due.

9. **Timely Payment of Rent:** Failure of Tenant to pay rent on the day it is due on three or more occasions during any previous six month period is a breach of this Agreement and grounds for termination of the tenancy.

10. **Domestic Violence.** A tenant who has a reasonable apprehension of present danger to him or her or his or her child from domestic violence, sexual assault, or stalking may have special statutory rights to seek a release of rental obligation under MCL 554.601b.

11. **Additional Rent:** If the Tenant fails to perform any obligation of this Agreement, such as, but not limited to, payment of utilities, trash removal, repairs, maintenance, etc., which results in a monetary expenditure by the Landlord, such amounts will be deemed additional rent which is immediately due and payable AND all payments made to Landlord will be applied to amounts in the following order: 1st-security deposit; 2nd-late fees; 3rd-utilities; 4th-maintenance or repairs, damages, other charges permitted by this Agreement; 5th-past due rent; 6th-current rent due.

12. **Returned Checks and Other Bank Charges.** If any payment offered by Tenant to Landlord in payment of rent or any other amount due under this Agreement is returned for lack of sufficient funds, a "stop payment" or any other reason, Tenant will pay Landlord a returned check charge of $ 35, plus any bank charges assessed.

13. **Renewal and Modification of Lease Agreement.** This Agreement shall be automatically renewed for successive terms of one month each, subject to the following conditions: Landlord or Tenant may decline the automatic renewal of this Agreement by giving notice of intent to terminate the tenancy with a 30 day written notice. Landlord may increase said rental amount or modify Agreement for any extended term by giving advance written notice equal to 30 days to the Tenant. Tenant agrees that any changes or modifications of this Agreement must be written and signed by Landlord or their Agent. Under no circumstances are oral agreements binding.

14. **Cleaning Fee.** Tenant agrees to pay a non-refundable cleaning fee of $ 0 (Cleaning Fee must be paid prior to move-in date.) This fee is in addition to and is not part of the security deposit.

15. **Security Deposit.** Tenant agrees to pay security deposit of: _____ ___ /100 dollars ($ 0 ) which will be refunded after termination of tenancy and end of Tenant's occupancy in the manner prescribed in the Landlord-Tenant Relationship Act of the State of Michigan, and upon satisfaction of the terms and conditions of this Agreement. *Tenant may not, without Landlord's prior written consent, apply this security deposit to the last month's rent or to any other amount owed or due under this Agreement.*

**Other Cost.** Other cost will be paid by the parties as designated below (T = Tenant, L = Landlord):

| | | | | | |
|---|---|---|---|---|---|
| Electricity: (T) L | Lawn: (T) L | Pest Control: (T) L | Smoke Detector Battery: (T) L |
| Heating Fuel: (T) L | Garbage: (T) L | Snow Removal: (T) L | Telephone Lines: (T) L |
| Cooking Fuel: (T) L | Trash: (T) L | Shovel Walks: (T) L | Other: _____ (T) L |

Water: ☒ Tenant agrees to pay for water and sewage services and have these services placed in their own name. Furthermore, the tenant agrees that Lessor/Landlord shall not be liable for payment of water or sewage system bills accruing subsequent to the filing by Lessor of an affidavit as provided for in MCL 123.165 with the appropriate municipal authority. Tenant agrees to pay and be responsible for such bills and understands that the municipality may terminate water and sewage services if bills are not paid.

17. **Excessive Utility Usage.** In the case where the Landlord pays the utility, the Tenant agrees to reimburse Landlord for utility usage, including unreported water leaks that exceed the monthly average use during the preceding twelve month period.

18. **Notice of Utility Shut Off.** Where Tenant is responsible for paying for any or all utilities, Tenant shall send the Landlord a certified letter seven (7) days in advance of any utility being turned off. If Tenant fails to give such notice; Tenant agrees to pay Landlord for any damages caused by the utilities being turned off. Tenant also agrees that the Landlord may obtain duplicate copies of shut off notice from the utility(ies) company.

19. **Inventory Checklist.** Tenant hereby acknowledges receiving an inventory checklist that must be returned to the Landlord within seven (7) days of obtaining possession of the Premises or the Premises will be considered free of defects. Items found torn, burned, stained, inoperative, or damaged in any way must be reported on the inventory checklist; otherwise said defects shall be deemed waived.

20. **Habitability.** Tenant has checked the Premises thoroughly and agrees the unit is entirely habitable as to health and safety; however, if any health and safety issue in regard to the Premises is found upon move-in, Tenant shall send the Landlord a certified letter within forty-eight (48) hours of move-in date, notifying him or her of the details.

21. **Locks and Landlord Access.** Tenant will not, without Landlord's prior written consent, alter, re-key, or install any locks to the Premises or install or alter any burglar alarm system. Tenant will provide Landlord with a key or keys capable of unlocking all such re-keyed or new locks as well as instructions on how to disarm any altered or new burglar alarm system. All keys must be returned upon vacating the Premises. $ _____ will be charged for each lost or missing key, plus the actual cost of replacing the keys and/or changing the locks. Tenants were given ____ keys at the beginning of the lease.

22. **Subleasing, Sharing, Assignment, and Guest at Premises.** No subleasing, sharing of Premises, or assignment of Agreement is permitted without prior written permission of the Landlord.

23. **Parking.** No parking on property other than Tenant's personal vehicle is allowed and then only at such locations as specified by Landlord. No commercial vehicles, boats, trailers, recreational vehicles or unlicensed or inoperable vehicles or any other vehicle not allowed by law shall be parked on the Premises. Repair or maintenance of vehicles is not allowed on property without written permission. Tenant agrees that Landlord may remove unauthorized vehicles with or without notice, and Tenant shall reimburse Landlord for the cost of such removal.

24. **Personal Injury/Liability/Indemnification/Damage to Tenant's Personal Property.** Landlord shall not be liable for any damage or injury occurring on or about the Premises to Tenant, Tenant's family members, guests or invitees, except in the case of Landlord's failure to perform, or negligent performance of, a duty imposed by law. Tenant hereby agrees to protect, indemnify and hold Landlord harmless from and against any and all losses, costs, expenses, damages, or liability arising out of any accident or other occurrence on the Premises or any part thereof, or in any common area, causing injury to any person or property whomsoever or whatsoever, no matter how caused, except in the case of Landlord's failure to perform, or negligent performance of, a duty imposed by law. Landlord is not responsible for damage to Tenant's personal property resulting from fire, storm, rain, flood, power outage, appliance failure, theft, vandalism, leaking fixtures, acts of God, etc. Tenant accepts responsibility for insuring their personal property. **Landlord highly recommends the Tenant obtain renter's insurance.** Tenant shall also be liable to Landlord or its insurance carrier for any damage to the premises or to the Landlord's other property, such as other rental units, common facilities and equipment that is caused by the acts or omissions of Tenant or Tenant's guests.

25. **Pets.** No animals or pets shall be brought on the Premises without prior written consent of the Landlord and upon the execution of a Pet Agreement and the payment of any applicable fees.

©2017 Rental Property Owners Association of Kent County     Form No. 2     Tenant's Initials _____     Page 3 of 6

**Tenant's Maintenance Responsibilities.** Tenant shall keep the Premises, including furniture and all fixtures, in a clean, sanitary and orderly condition with special attention to the stove and refrigerator, if provided, and leave the unit in the same condition as when taken except for normal wear and tear. Landlord will not pay for cleaning or any work of this kind contracted by the Tenant, unless expressly authorized in writing.

27. **Common Areas.** The sidewalks, driveways, passages, halls and common areas shall not be obstructed nor used for any purpose other than ingress or egress from the premises. Bicycles, skateboards, scooters, roller-skates, rollerblades or any device of the like are not permitted in common areas, hallways, roof top patio, sidewalks or the parking area.

28. **Storage:** Storage is not allowed except in areas designated by the Landlord. Tenants are solely responsible for their personal belongings wherever stored or placed. If stored in an area not designated by Landlord, Landlord can remove personal belongings with 24 hour notice.

29. **Renovations and Remodeling.** Tenant agrees not to make any repairs or alterations to the Premises, including repainting, remodeling, driving nails in woodwork or walls, using any adhesive items on walls, without written consent of the Landlord. The Landlord will not pay for remodeling, decorating, or any work of this kind contracted by Tenant, unless authorized in writing prior to the beginning of any renovation or remodeling. The Tenant further agrees not to remove any furnishings, fixtures, or appliances without written consent of the Landlord.

30. **Items Not Allowed.** Tenant may not place any of the following in or on the Premises without written authorization from Landlord:
_____
_____

31. **Repairs.** With written permission of the Landlord, the Tenant agrees to promptly have repairs made by authorized persons only or reimburse Landlord for damages to the Premises during the tenancy. The Landlord must be notified immediately of anything broken, stained, leaking, or inoperable. Tenant shall immediately pay for any costs incurred and/or damages resulting from overflowing, and/or clogging of waste pipes, garbage disposal, toilets, sinks, tubs, showers, or lavatory caused by Tenant or guest. Tenant accepts responsibility to mitigate damage to property from any and all causes.

32. **Landlord's Rights Concerning Entry.** Landlord reserves the right to repair, show unit, or inspect the Premises upon twenty-four (24) hour notice. In the event of emergencies, the Landlord may enter without notice.

33. **Disposal of Garbage, Debris, and Junk.** Tenant agrees to regularly dispose of all garbage, debris, or junk during occupancy and upon vacating the Premises as prescribed by the laws of the State of Michigan and the ordinances of the locality in which the Premises is located. Tenant agrees to pay all fines and fees regarding disposal of said items and for violations of municipal ordinances.

34. **Use of Premises.** Tenant agrees to use the Premises for residential purposes only and not for business, illegal, or hazardous purposes. Tenant may be evicted upon a one (1) day Notice to Quit if the Tenant, member of Tenant's household, or other person under the Tenant's control, has manufactured, delivered, possessed with intent to deliver or possessed a controlled substance as defined by Michigan Public Act 368 of 1978, on the Premises. Tenant shall not permit a use of the Premises that generates an unusual amount of traffic.

35. **Parties & Other Disturbances Not Allowed.** Tenant agrees that no parties are allowed; and no one is permitted to carry out any activity, play an instrument, use an electronic device, or operate any mechanical device in any manner or otherwise engage in conduct that disturbs or annoys other Tenants or neighbors. Tenant is responsible for the activity and conduct of all occupants, guests and visitors.

36. **Smoke Detector Disclosure.** Tenant agrees that the Premises is equipped with working smoke detectors. Tenant shall maintain smoke detectors in working order at all times. Tenants will be charged for the replacement of missing or damaged smoke detectors and for damages caused by their removal.

37. **Rules & Regulations.** Any rules and regulations published by Landlord become part of this Agreement. Tenant agrees to abide by all rules and regulations that may be published by Landlord.

38. **Violations of Agreement and Cause for Eviction.** Violation of any provision of this Agreement, rules, or regulations, including non-payment of rent can be cause for eviction. Furthermore, acts committed by tenants or their guest in violation of local, state or federal laws and regulations can be cause for eviction.

**ctronic Service Consent.** By initialing this clause and providing an email address below, the below Tenant(s) hereby consent to receive all demands for possession nonpayment of rent as provided for under MCL 600.5716 by electronic service. Tenant(s) request any demands be sent to the following email address(es):

Tenant's Name: _____  Email Address: _____
Tenant's Name: _____  Email Address: _____
Tenant's Name: _____  Email Address: _____
Tenant's Name: _____  Email Address: _____

An email confirmation of this consent will be sent to the email address(es) listed above. You must affirmatively respond to the email to confirm your agreement to electronic service.

**Tenant initials:** _____   _____   _____   _____

40. **Lead-based Paint Disclosure.** (Housing constructed before 1978 only.) Tenant acknowledges receipt, review and execution of the Lead Warning and Disclosure Statements and applicable reports and the receipt of the EPA pamphlet, "Protect Your Family From Lead In Your Home."

41. **Covenants and Conditions.** Each provision of this Agreement to be performed by Tenant shall be deemed both a covenant and a condition which Tenant agrees to abide by strictly. Any violation of any provision of this Agreement shall constitute a material breach of same, in which case Landlord may, at option, terminate this Agreement according to its terms. In the event of such termination, Landlord agrees to use their best effort to re-rent the Premises or to otherwise mitigate damages as required by law.

42. **Binding Effect.** The covenants, conditions, and agreements contained in this Agreement shall bind and inure to the benefit of the Landlord and the Tenant and their respective heirs, distributees, executors, administrators, successors, and assigns.

43. **No Waiver.** Landlord's failure to enforce any term of this Agreement shall not be deemed a waiver of the enforcement of that or any other term. The receipt by Landlord of rent with knowledge of a breach of any term of this Agreement shall not be deemed a waiver of such breach, nor shall partial payment of rent be deemed a waiver of Landlord's right to the full amount thereof.

44. **Severability.** If any provision of this Agreement should be or become invalid, such invalidity shall not in any way affect any of the other provisions of this Agreement, which shall continue to remain in full force and effect.

45. **Subordination.** The Agreement is and shall be subject and subordinate to any ground or underlying agreement or lease and mortgages now or hereafter affecting the real estate of which the Premises are a part, and to all renewals, modifications, replacements, and extensions thereof.

46. **Early Termination.** If the Tenant has occupied the unit for more than thirteen (13) months and the Tenant becomes eligible during the lease term to take possession of a subsidized rental unit in senior citizen housing and provides the Landlord with written proof of that eligibility or the Tenant becomes incapable during the lease term of living independently, as certified by a physician in a notarized statement, the Tenant may terminate this lease with a sixty (60) day written notice to the Landlord.

47. **Abandoned Property.** If the Tenant abandons the Premises, the Landlord is authorized, at their sole discretion, to peacefully repossess the Premises and dispose of any and all of the Tenant's abandoned personal property, including but not limited to food, clothing, jewelry, sundries, appliances, furnishings, window treatments, decorations, fixtures, bedding, equipment, machinery, and vehicles.

48. **Other** _____
_____
_____

49. **Entire Agreement.** Tenant acknowledges that Landlord has made no representations or promises with respect to the Premises except as herein expressly set forth and that the foregoing constitutes the entire Agreement between the parties.

nant's signature below indicates the Tenant has read, understands, is satisfied with, and agrees to abide by all conditions of this agreement. The invalidation of any provision herein by Judgment of Court order shall not otherwise affect any of the other provisions of this agreement.

_____  _____  3/28/19
Signature of Property Owner/Agent/Landlord   Signature of Tenant   Tenant's Social Security Number

Charles H. Dotson
Printed Name of Property Owner/Agent/Landlord   Signature of Tenant   Tenant's Social Security Number

_____  _____
Signature of Tenant   Tenant's Social Security Number

_____  _____
Signature of Tenant   Tenant's Social Security Number

"You must notify your landlord in writing within four (4) days after you move of a forwarding address where you can be reached and where you can receive mail. Otherwise your landlord shall be relieved of sending you an itemized list of damages and the penalties adherent to that failure."

**Security Deposit Notice**

Security deposit of $ 0 is to be deposited at: _____

And, if applicable, Surety Bond has been posted with: _____